IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 06-cv-01869-MSK-MJW

WILLIAM ALBERT O'NEIL,

    Plaintiff,

v.

WOLPOFF & ABRAMSON, L.L.P. and
PLATINUM FINANCIAL SERVICES CORPORATION, et al.,

    Defendants.

**RECOMMENDATION REGARDING DEFENDANT WOLPOFF & ABRAMSON, L.L.P.'S MOTION TO ENFORCE SETTLEMENT AGREEMENT (DOCKET NO. 62)**

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

    This matter was before the court on August 2, 2007, for hearing consistent with United States v. Hardage, 982 F.2d 1491, 1496 (10th Cir. 1993), on Defendant Wolpoff & Abramson, L.L.P.'s Motion to Enforce Settlement Agreement and legal brief (docket nos. 62 and 63). The court has reviewed the motion (docket no. 62) and has considered the testimony and credibility of Ronald Abramson, Thomas Henning, John Phillips, Ronald Cantor, and William O'Neil and the exhibits received into evidence during this hearing. Plaintiff did not file a specific response to the subject motion, but instead Plaintiff argues that this court should consider his other motions and responses filed in this case which are pending before this court. This court has declined to consider those other motions and responses filed by Plaintiff noting that to do so would

be in violation of D.C.COLO.LCivR 7.1 C. The last paragraph of D.C.COLO.LCivR 7.1 C states: "A motion shall not be included in a response or reply to the original motion. A motion shall be made in a separate paper." In addition, the court has considered applicable Federal Rules of Civil Procedure and case law. The court now being fully informed makes the following findings of fact, conclusions of law, and recommendation.

## FINDING OF FACT AND CONCLUSIONS OF LAW

This court finds:

1. That I have jurisdiction over the subject matter and over the parties to this lawsuit;

2. That venue is proper in the state and District of Colorado;

3. That each party has been given a fair and adequate opportunity to be heard;

4. That at the outset of this hearing, Plaintiff through his counsel, Paul F. Miller, Esquire, confessed Defendant Wolpoff & Abramson L.L.P.'s Motion In Limine [regarding Mr. Miller testifying during this hearing] (docket no. 87). Accordingly, this court granted this motion (docket no. 87), and Mr. Miller did not testify during this hearing;

5. That a trial court has the power to summarily enforce a settlement agreement entered into by the litigants while the litigation is pending before it. Shoels v. Klebold, 375 F.3d 1054, 1060 (10th Cir. 2004), cert. denied, 543 U.S. 1147 (2005); QFA Royalties LLC

3

v. A & D Foods, Inc., 2007 WL 1549039 (D. Colo. May 25, 2007);

6. That "[i]ssues involving the formation, construction and enforceability of a settlement agreement are resolved by applying state contract law." United States v. McCall, 235 F.3d 1211, 1215 (10th Cir. 2000). See QFA Royalties LLC v. A & D Foods, Inc., 2007 WL 1549039 (D. Colo. May 25, 2007). "Under Colorado law, the essential elements of a contract include 'mutual assent to an exchange, between competent parties, with regard to a certain subject matter, for legal consideration.'" QFA Royalties LLC v. A & D Foods, Inc., 2007 WL 1549039, *2 (D. Colo. May 25, 2007) (quoting Indus. Prods. Int'l v. Emo Trans, Inc., 962 P.2d 983, 988 (Colo. App. 1997)). "An offer is a manifestation by one party of a willingness to enter into a bargain, and an acceptance is a manifestation of assent to the terms of the offer." Id. (quoting Indus. Prods. Int'l v. Emo Trans, Inc., 962 P.2d at 988 [citing Restatement (Second) of Contracts 24, 32 (1979)]);

7. That on April 27, 2007, a telephone conference took place. This telephone conference included Mr. Miller, Mr. Abramson, Mr. Cantor, and Mr. Phillips;

8. That during the April 27, 2007, telephone conference, a settlement was reached between Plaintiff William Albert O'Neil and Defendants Wolfpoff & Abramson, L.L.P., and Platinum Financial

---

4

Services Corporation. The settlement resolved all claims including claims for malicious prosecution, invasion of privacy, and outrageous conduct (hereinafter referred to as "potential tort claims") <u>except</u> any Telephone Consumer Protection Act (hereinafter "TCPA") claims. The essential terms of this "global settlement" between these parties was as follows:

> Defendant Platinum Financial Services Corporation would pay Plaintiff William Albert O'Neil $5,000.00 to settle all claims and provide him with an assignment of the credit account it was attempting to collect. Defendant Wolpoff & Abramson L.L.P. would pay Plaintiff William Albert O'Neil $1,000.00 for the FDCPA claims. Defendant Wolpoff & Abramson L.L.P. would pay to Plaintiff William Albert O'Neil a reasonable attorney fee of $10,000.00 plus the actual costs of travel and the deposition expenses of Ronald M. Abramson. The TCPA claims were not part of this settlement. Plaintiff's counsel, Mr. Miller, was to draft the settlement documents. <u>See</u> testimony of Ronald Abramson, Thomas Henning, John Phillips, and Ronald Cantor and Defendants' exhibit G;

9. That the parties knew that this settlement as stated above was to be a "global settlement" and would be a full and complete

5

settlement of all claims that have been brought <u>or</u> could have been brought <u>except</u> for the TCPA claims. It should be noted that at the time of this settlement on April 27, 2007, there were no TCPA claims within the operative Complaint nor were there any tort claims for malicious prosecution, invasion of privacy, and outrageous conduct in the operative Complaint. <u>See</u> Minute Order (docket no. 47) denying Plaintiff's Motion for Leave to Amend (docket no. 45) for failure to comply with D.C.COLO.LCivR 7.1 A;

10. That Plaintiff's counsel, Mr. Miller, was aware of the potential tort claims at the time he agreed to the "global settlement" as stated above. Mr. Miller further knew that such potential tort claims were to be included in the "global settlement." Mr. Miller's questioning of the Defendants' witnesses indicating that he (Mr. Miller) never intended to include such potential tort claims is contrary to his own closing argument wherein he admits he was aware of the potential tort claims in early April 2007, and well before April 27, 2007. <u>See</u> Mr. Miller's closing argument;

11. That Mr. Miller had both actual and apparent authority to enter into this "global settlement" for the Plaintiff. This "global settlement" does include the potential tort claims. I find there was a meeting of the minds between the subject parties to enter into the "global settlement" as outlined in paragraph 8 above and in Defendants'

6

exhibit G.  I further find Plaintiff's testimony that Mr. Miller did not have the authority to settle the potential tort claims to be unreliable and untrustworthy.  I further find that Mr. Miller never mentioned the potential tort claims in his e-mail dated Sunday, April 29, 2007, at 7:34 a.m. (Defendants' exhibit I) <u>or</u> in his subsequent e-mail dated Monday, April 30, 2007, at 8:46 a.m. (Defendant's exhibit J-1), but Mr. Miller did mention that the TCPA claims were not part of this "global settlement" which is consistent with Defendants' exhibit G.

## RECOMMENDATION

**WHEREFORE**, based upon these findings of fact and conclusions of law, this court **RECOMMENDS**:

1. That Defendant Wolpoff & Abramson, L.L.P.'s Motion to Enforce Settlement Agreement and legal brief (docket nos. 62 ) be **GRANTED**;

2. That Plaintiff William Albert O'Neil and Defendants Wolpoff & Abramson, L.L.P. and Plaintinum Financial Services Corporation be directed to perform fully under this "global settlement" as outlined above in paragraph 8 and also outlined in Defendants' exhibit G by September 13, 2007;

3. That each party should pay their own attorney fees and costs for this motion;

7

4. That if Judge Krieger approves this recommendation, then the parties be directed to file their stipulation for dismissal with prejudice with this court on or before September 18, 2007, since the TCBA claims were never part of the operative Complaint; and

5. That the other outstanding motions pending before Judge Krieger be denied as MOOT.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have ten (10) days after service of this recommendation to serve and file written, specific objections to the above recommendation with the District Judge assigned to the case. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, Fed. R. Civ. P. 72(b), Thomas v. Arn, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. Makin v. Colorado Dep't of Corrections, 183 F.3d 1205, 1210 (10th Cir. 1999); Talley v. Hesse, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Done this 28th day of August 2007.

BY THE COURT

s/ Michael J. Watanabe
Michael J. Watanabe
U.S. Magistrate Judge